**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JANE KAWALKOWSKI-KOJAC,**

                              **Plaintiff,**                    **06-CV-1527**
                                                                **(GLS/DRH)**

                    **v.**

**OTTO OLDSMOBILE-CADILLAC, INC.,**
**now known as OTTO CADILLAC, INC.,**

                              **Defendant.**
_____

**APPEARANCES:**

**FOR THE PLAINTIFF:**
Berger, DuCharme Law Firm            KIMBERLY A. HARP, ESQ.
10 Maxwell Drive, Suite 205          CHERYL L. SOVERN, ESQ.
Clifton Park, NY 12065

**FOR THE DEFENDANT:**
Ryan, Smallacombe Law Firm           JOHN F. MOORE, ESQ.
100 State Street, Suite 800          CLAUDIA A. RYAN, ESQ.
Albany, NY 12207

**Gary L. Sharpe**
**U.S. District Judge**

## DECISION AND ORDER

        After being terminated from her employment with Otto Oldsmobile-

Cadillac, Inc. ("Otto"), Jane Kawalkowski-Kojac ("Kojac") filed this lawsuit

against Otto, claiming, among other things, age discrimination under the

Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 to 634.  Otto has filed a motion for summary judgment.  Following review of Otto's motion, brief in support thereof, Kojac's response, and the record on the matter, the court grants Otto's motion.

## BACKGROUND

The following relevant facts are undisputed.[1]  Kojac worked for Otto from 1977 until she was terminated in 2004.  While working for Otto, Kojac worked as a billing clerk, an office manager, and a controller.  (Complaint at ¶¶ 13-15.)  As a controller, Kojac oversaw the operations of other dealerships/franchises owned by Otto, trained office managers, and was involved in the accounting of these dealerships.  (Plaintiff's Response to Defendant's Rule 7.1 Statement of Material Facts at ¶ 29.)

---

[1]The court would like to direct the parties' attention to Local Rule 7.1(a)(3) which states:

The Statement of Material Facts shall set forth . . . each material fact about which the moving party contends there exists no genuine issue. . . . The opposing party shall file a response [that] mirrors the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions . . . the non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs.

N.Y.L.R. 7.1(a)(3).  The court notes neither party fully complied with this rule and, instead, bombarded the court with over 400 facts, many of which were disputed or irrelevant.  The court would like to remind the parties that this court is not obligated to search the record for factual matters that support a grant or denial of a summary judgment motion, and will not do so in the future.  "Judges are not like pigs, hunting for truffles buried in" the record.  *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991).

In 1986, Otto hired Tracey Van Allen.  (*Id.* at ¶¶ 34 and 36.)  Van Allen worked for Otto in various positions until she became the office manager for Westside Cadillac (a dealership previously owned by Otto) in 1992.  (*Id.*)

Between 1994 and 2002, Van Allen served as the office manager of Saturn of Albany (another Otto dealership).  (*Id.* at ¶ 37.)  However, Van Allen left her employment with Otto in late 2002.  (*Id.* at ¶ 60.)

During March 2002, Kojac received a work evaluation that rated her at the highest level possible.  (*Id.* at ¶ 76.)  At some point in 2002, however, Otto asked Kojac to make staff changes, correct problems with overtime, and hire new employees to assist her with a backlog of work.  (*Id.* at ¶¶ 89, 91-95, and 100.)  In December 2002, Kojac was also asked to hire an assistant.  (*Id.* at ¶¶ 106-08, 127-128, and 137-139.)  Kojac failed to hire anyone to assist her, thus, in January 2003, Otto rehired Van Allen as Kojac's assistant.  (*Id.* at ¶¶ 129, 140, 144, 147.)

In May 2003, Otto moved Kojac to the Saturn dealership as the office manager to eliminate some of the problems created by a previous office manager.  (*Id.* at ¶ 165.)  While at Saturn, Kojac was under the supervision of Richard Perella, a partner at Saturn.  (*Id.* at ¶ 167.)  Kojac retained her

3

title of controller and stayed at Saturn until June 2004.  (*Id.* at ¶ 168.)

During the time Kojac was at Saturn, Van Allen assumed the position of office manager in Kojac's previous dealership site.  (*Id.* at ¶ 169.)  Kojac, however, was <u>responsible</u> for overseeing Van Allen's functions.  (*Id.* at ¶¶ 170, 172 and 174.)  While at Saturn, Kojac noticed Van Allen's performance was unsatisfactory.  (*Id.* at ¶ 173 and 176.)  At the same time, Perella talked to Kojac about her own work performance.  (*Id.* at ¶¶ 218-220.)  Perella testified that Kojac was lethargic, with no passion for business and no attention to detail.  (*Id.*).  Perella voiced concerns several times about Kojac's performance.  (*Id.* at ¶ 235.)

In June 2004, a decrease in business and the loss of franchises forced Otto to restructure.  (*Id.* at ¶¶ 245-247 and 268.)  The restructuring process ultimately resulted in eliminating Kojac's position of controller and returning Kojac to Otto Cadillac as the office manager.  (*Id.* at ¶¶ 249.) Otto indicated Van Allen, thus, would move to another location as office manager.  (*Id.* at ¶ 252.)  Also as a result of the restructuring process, Kojac no longer oversaw the functions of other Otto dealerships and Kojac's salary was reduced.  (*Id.* at ¶¶ 265 and 269.)  Nevertheless, following the 2004 restructuring, Kojac was still the highest paid office

4

manager amongst the various Otto dealerships.  (*Id.* at ¶ 270.)

Following Kojac's return to Otto Cadillac, more complaints emerged regarding her work performance, and ultimately, on September 7, 2004, a meeting took place to address the issue.  (*Id.* at ¶¶ 295-296.)  At the meeting, many problems relating to Kojac's performance were discussed, including problems of schedules, staff vacations, inventory, cash flow, and hiring.  (*Id.* at ¶ 298.)  Kojac was emotional and admitted that she was unable to concentrate on her duties.  (*Id.* at ¶¶ 299-301.)  Otto discussed with Kojac the possibility of taking time off, but Kojac rejected such option. (*Id.* at ¶¶ 302-303.)

On September 27, 2004, at age 55, Kojac was terminated.  (*Id.* at ¶ 305.)  By memorandum, Otto indicated Van Allen would fill Kojac's position until Kojac's replacement was selected.  (*Id.* at ¶ 309.)  In September 2006, Otto terminated Van Allen– at age 39– due to her poor record keeping.  (*Id.* at ¶¶ 325-326.)  Van Allen was succeeded by a new 61 year old office manager.  (*Id.* at ¶ 328. )

In December 2006, Kojac brought this action against Otto claiming, among other things, age discrimination under the ADEA.  Otto has moved for summary judgment.

5

## **DISCUSSION**

### **I.   Standard of Review**

To defeat a summary judgment motion, the nonmoving party must show sufficient evidence to create a genuine issue of material fact.  *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004).  The nonmoving party must provide more than a scintilla of evidence.  *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986).  In other words, the party must present sufficient evidence to permit a reasonable juror to find in its favor, but the nonmoving party cannot simply rely on unsupported allegations in attempting to survive a summary judgment motion.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

### **II.   ADEA Claim**

"The ADEA makes it unlawful for employers to discriminate on the basis of age against employees age 40 or older."  *Dist. Council 37 v. New York City Dep't of Parks & Recreation,* 113 F.3d 347, 351 (2d Cir. 1997) (citations omitted).  "A plaintiff alleging age discrimination can sue under disparate treatment or disparate impact theories."  *Id.*  "The essence of a disparate treatment claim is that the employer intentionally discriminated against a member of a protected class."  *Id.*  "In contrast, disparate impact

6

results from the use of employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on a protected group and cannot be justified by business necessity." *Id.* (quotations and modifications omitted).

In ADEA cases, a plaintiff may survive a defendant's motion for summary judgment in one of two ways.  *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 76 (2d Cir. 2001).  The plaintiff may present either direct evidence of discrimination, that is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, supporting a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.  *Id.*  Alternatively, if the plaintiff lacks evidence that clearly points to the presence of an illegal motive or direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *Id.*; *see also Johnson v. State of N.Y.,* 49 F.3d 75, 78 (2d Cir. 1995).  Under this framework, the plaintiff bears the burden of establishing a prima facie case of discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248,

7

252-53 (1981).  The Supreme Court explained the plaintiff's burden "is not onerous."  *Id.* at 253.  The establishment of a prima facie case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions.  *Id.* at 254-56.  If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual.  *Id.*

In this case, because there is no direct evidence of discrimination, Kojac must rely on the *McDonnell Douglas* framework.  *Holtz,* 258 F.3d at 76.  A plaintiff establishes a prima face case for a disparate treatment claim by showing (1) she was within the protected age group, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference of age discrimination.  *Id.* at 76-77.   A plaintiff establishes a prima facie case for a disparate impact by showing that a facially neutral employment policy or practice has a significant disparate impact.  *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 111 (2d Cir. 2001) (quotations and citations omitted).  Thus, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship

8

between the two.  *Malave v. Potter,* 320 F.3d 321, 325 (2d Cir. 2003)
(quotations and citations omitted).

Here, under the theory of disparate impact, Otto asserts that Kojac
has failed to establish a prima facie case because she has failed to identify
a specific employment practice that, although facially neutral, had an
adverse impact on her.  This court agrees.  *See Watson v. Fort Worth Bank
and Trust,* 487 U.S. 977, 994 (1988).  In fact, Kojac seems to have
abandoned such theory in her response.  As to Kojac's claim under the
theory of disparate treatment, neither party disputes that Kojac can
establish a prima facie case, nor do the parties dispute Otto has articulated
nondiscriminatory reasons for firing Kojac.  The parties' real dispute is
whether Kojac has carried her burden to show that Otto's proffered reasons
are pretextual.  The court, however, determines that Kojac's claims of
discrimination ultimately fail because she cannot show that Otto's reasons
for her dismissal are pretexual.

Kojac contends that her excellent performance appraisal (received
almost two and a half years before she was terminated) and her increased
salary reflect that Otto's reasons for terminating her are pretextual.  This
court cannot agree.  Kojac's performance evaluation took place in March

9

2002, but Otto claims Kojac's performance problems started later that year. As one circuit court put it, an employee's "prior evaluations, however, are not sufficient to defeat [a] motion for summary judgment.  These evaluations may show that [an employee] performed competently in the past, but they do not render her more recent negative evaluations inherently untrustworthy."  *Rose-Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1109 (8th Cir. 1998); *see also Clay v. City of Chicago Dep't of Health,* 143 F.3d 1092, 1094 (7th Cir. 1998); *Katz v. Met-Pro Corp.,* 412 F.3d 463, 474 (3d Cir. 2005); *Brown v. Soc. for Seaman's Children,* 194 F.Supp.2d 182, 192 (E.D.N.Y. 2002).  Likewise, neither the positive opinions of three former Otto employees of Kojac's work performance, nor Kojac's stress from a divorce, specifically contradict in anyway the negative observations by Kojac's employer.

Kojac does not dispute that months after receiving her high-rating evaluation issues concerning her performance emerged.  The record reflects Kojac admitted that she was unable to concentrate on her duties. Kojac asserts she never saw or signed documents that indicate the relevant reasons for her dismissal, but the record does not indicate Kojac disputes the relevant issues in those documents.  Kojac also asserts

10

certain inconsistencies exist in Otto's responses, but none of the inconsistencies she points out are relevant to the ultimate determination of whether age was a factor in her termination.  "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Ptasznik v. St. Joseph Hosp.,* 464 F.3d at 691, 696 (7th Cir. 2006) (internal quotations and citations omitted); *see also Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir. 1995) ("An employer's reason for termination cannot be proven to be a pretext for discrimination unless it is shown to be false and that discrimination was the real reason.").

Kojac contends her salary increases demonstrate pretext.  However, the fact that Kojac received pay increases does not in itself prove that she was performing to Otto's expectations, much less age discrimination by Otto a year later. *Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 398 (7th Cir. 1998).  Likewise, the elimination of Kojac's position as a controller and the reduction in her salary– both because of a decrease in business– do not demonstrate pretext.  Kojac states Van Allen's salary was not reduced.  However, as Otto points out, the record indicates Otto planned to move Van Allen to another dealership and reduce her salary

11

but, shortly after Van Allen started at the new location, Otto terminated

Kojac, and Van Allen did not permanently move to the other dealership as

anticipated.  Whether or not Van Allen's move to a different dealership for a

shorter period of time than the one anticipated warranted a reduction on

Van Allen's pay is not for the court to decide.  Otto's restructuring process

and any expected or unexpected adjustments are business decisions

solely for Otto to make.  The court is not a business manager that counsels

entities as to how to run a business.  *Rose-Maston,* 133 F.3d at 1109

("'[T]he employment discrimination laws have not vested in the federal

courts the authority to sit as super-personnel departments reviewing the

wisdom or fairness of the business judgments made by employers, except

to the extent that those judgments involve intentional discrimination.'"

(citations omitted)); *Estate of Detwiler v. Offenbecher,* 728 F.Supp. 103,

148 (S.D.N.Y. 1989) ("Courts are ill-equipped to review a business

decision's merits.").

     Kojac also contends that Van Allen was hired with the anticipation to

replace Kojac.  However, as Otto points out, the record indicates that Van

Allen was hired only because Kojac disregarded Otto's directives to hire

someone to assist her.  Likewise, Kojac's contention that Van Allen was not

fired for her poor performance misses the mark.  The record indicates Kojac was, as the "controller," responsible for overseeing Van Allen's functions.[2]  Insisting on this issue, Kojac points to several defects in Van Allen's performance.  However, those defects are primarily about Van Allen's negative personality, i.e, being unapproachable, upset, unhappy, etc., whereas Kojac's defective performance had to do with her responsibility on issues of vacations, inventory, cash flow, hiring problems, etc.   On this record, Kojac, the "controller," and Van Allen were not similarly situated in all material respects.  *See Graham v. Long Island R.R.,* 230 F.3d 34, 40 (2d Cir. 2000).  Nevertheless, the record indicates that Kojac and Van Allen's inadequacies were, eventually, too much for Otto and, months before the commencement of this action, Otto also fired Van Allen and replaced her with a new employee who is older than both Kojac and Van Allen.

Kojac further claims that Otto previously terminated other employees because of their age and submitted three affidavits from three former

---

[2]Kojac also contends Otto's decision to send her to the Saturn dealership is also proof of age discrimination.  This court disagrees.  The record reflects that Otto sent Kojac to the Saturn dealership because it thought Kojac could handle the challenge of putting that dealership back into shape.  The record, however, indicates that Kojac did not perform up to Otto's expectations and, approximately one year later, Kojac was sent back to her previous dealership where her poor performance and failure to meet Otto's expectations continued.

employees stating they believe they were terminated because of their age.

However, the subjective belief of these three former employees that age

was a factor in their termination does not rebut or controvert Otto's

reasons– including downsizing resulting from Otto's failed plans to obtain

another dealership– for discharging these individuals.  *Williams v. R.H.*

*Donnelley, Corp.,* 368 F.3d 123, 128 (2d Cir. 2004) (noting that an

employee's "subjective [beliefs or] personal disappointments do not meet

the objective indicia of an averse employment action." (citation omitted)).[3]

    In sum, the court determines that there are no disputed genuine

issues of material fact with respect to Kojac's claims under the ADEA,

which also includes her claim of a willful violation of the statute.[4]

Accordingly, Otto is entitled to summary judgment.  Likewise, because age-

discrimination claims under ADEA and New York State Human Rights Law

---

[3]With respect to Mr. Geren, one of the former employees, Kojac states a supervisor also referred to him as "the old man" in a joking manner, but this "stray remark," on this record, is not probative on the ultimate question of age discrimination.  *Monte v. Ernst &Young LLP,* 148 F.App'x. 43, 45 (2d Cir. 2005); *Wyvill v. United Companies Life Ins. Co.,* 212 F.3d 296, 304 (5th Cir. 2000) ("In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was a determinative factor in the decision to terminate the employee.") (citations omitted); *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1140 (10th Cir. 2000).

[4]Under the ADEA, willfulness "can be established either by proof that a defendant actually knew that his conduct violated federal law or by reckless disregard of that fact."  *Cross v. New York City Transit Authority,* 417 F.3d 241, 252 (2d Cir. 2005).

claims are analyzed under the same standard, *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001), Otto is also entitled to summary judgment on Kojac's claims under state law.[5]

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Otto's motion for summary judgment is **GRANTED** and the case is dismissed; and it is further

**ORDERED** that the Clerk provide copies of this Decision and Order to the parties.

**IT IS SO ORDERED.**

Albany, New York
Dated: March 10, 2009

United States District Court Judge

---

[5]Having made this determination, the court finds it unnecessary to address Otto's timeliness issue briefly addressed in its brief.  *See* Defendant's brief at 2 (Dkt. No. 16).